### In re MAGNESS.

Court of Customs and Patent Appeals.
October 4, 1929.

Patent Appeal No. 2124.

John Boyle, Jr., of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge. This is an appeal from the decision of the Commissioner of Patents affirming the action of the Examiners in Chief in refusing to allow the claims of this application, which read as follows:

"1. A motor fuel composed of approximately fifty per cent. of gasoline and fifty per cent. of distillates of the light oils of bituminous coal containing principally benzol and toluol.

"2. A motor fuel composed of major quantities of gasoline and benzol and containing a minor quantity of toluol.

"3. A motor fuel, the major portion of which is gasoline, containing a minor portion of benzol and a still smaller quantity of toluol."

This application has had an extended history in the Patent Office. The claims filed with the application were frequently amended, and finally upon motion of the applicant all of them were canceled, and the three here in question were substituted. It does not appear, however, that the substitution involved any new matter, and the determination of this appeal requires a consideration of the action of the Patent Office prior to that time, as well as subsequent thereto.

Prior to said substitution there were two interferences declared, after which a voluminous prior art was brought to the attention of the Law Examiner. He decided that all of the counts of both interferences were unpatentable in view of the prior art. From this Magness appealed. The Board of Examiners in Chief sustained the finding of the Law Examiner, and the interferences were dissolved without the allowance of claims to any party. The applications thereupon were returned to the Principal Examiner. The claims here in question were substituted as hereinbefore stated and finally rejected by him. On appeal the Board af-

firmed the Principal Examiner and the Commissioner affirmed the Board.

The questions before us for determination are:

(1) Are .the claims unpatentable in view of the prior art?

(2) If not, did the Commissioner err in holding that the claims should be rejected upon the ground of estoppel?

Considering the first question of prior art, the principal references relied upon by the various officials of the Patent Office are: The patent to Backhaus, 1,271,114, July 2, 1918; the patent to Midgley, 1,296,832, March 11, 1919; the publication Automobile Rundschau, Berlin, May, 1913; the publication Pharmazeutische Post, published in Vienna, Austria, 1914, containing an article by Dr. Karl Dieterich-Helfenberg on the "Chemistry of the Motor Fuels, Benzine and Benzene."

Applicant's claims involve a motor fuel comprising a mixture of gasoline, benzol, and toluol.

Does the prior art disclose such a mixture?

The Commissioner held that the patent to Backhaus clearly shows that it has been common to provide liquid fuels containing, among other elements, all of the ingredients mentioned in applicant's claims, and clearly discloses the use of gasoline, benzol, and toluene. An examination of that patent discloses that alcohol was considered an indispensable element of the mixture, and each one of the 18 claims allowed gave alcohol as one of the ingredients. We do not agree with the Commissioner that this patent clearly discloses the use of gasoline, benzol, and toluene in such a way as to anticipate applicant's claims.

The Midgley patent involved a mixture of kerosene and benzol; the theory being to provide a fuel of a predetermined compression value, comprising a mixture of a hydrocarbon having a compression value higher than said predetermined value, and a hydrocarbon of a lower compression value than said predetermined value, but the proportions to be such as to make the resultant compression value of the mixture substantially equal to the said predetermined compression value.

We do not think that this patent can fairly be said to have anticipated applicant's claims.

In regard to the publication Automobile Rundschau, Berlin, criticism is made in applicant's brief of the translation, and he also asserts that the Commissioner has misconstrued certain words and phrases therein. This article details a number of experiments made by the author to obtain a satisfactory motor fuel as a substitute for commercial gasoline that would be cheaper. It appears that he was most successful with a mixture of petroleum ether and commercial or 90 per cent. benzol, which as a matter of common knowledge contains about 14 per cent. of toluol. Petroleum ether was considered by the Commissioner to be synonymous with gasoline, and therefore it disclosed the mixture set out in applicant's claims. Here we think the Commissioner was in error. Petroleum ether, according to the record, has a boiling point between 104 degrees F. and 176 degrees F. It is composed of Butane, Pentane and Hexane. It is a very light petroleum distillate, having a specific gravity of about 650, while motor gasoline has a specific gravity of from 700 to 750. Commercial gasoline has a boiling point ranging from 97 degrees F. to 393 degrees F. While, technically, petroleum ether may come within the range of gasolines for certain purposes, .we do think that in the article in question the author clearly had in mind and used a product which should not be termed gasoline. He states that petroleum ether cannot be used alone in an engine, which clearly shows that he was not referring to ordinary gasoline as we know it. 'It would appear from the record that benzine of medium specific gravity corresponds to our ordinary gasoline. The author states that he made experiments with benzine of medium specific gravity, but none of the experiments detailed in the article show a mixture of benzine of medium specific gravity with benzol or toluol. We do not think there is anything in this article which discloses the desirability of a mixture of gasoline, benzol, and toluol to produce a successful motor fuel. The most that can be said of it is that it pointed the way for experiment with mixtures such as are covered by applicant's claims.

We next come to the article in the Pharmazeutische Post, containing an address by Dr. Karl Dieterich-Helfenberg in Vienna, Austria, on April 4, 1914, upon the subject of "The Chemistry of Modern Motor Fuels, Gasoline and Benzol." In the course of this address it was stated: "What has been held against benzol as a motor fuel up to now as a disadvantage is, besides the difficulty of gasification and its higher specific gravity, its strong odor, further its property of solidifying below 0 degrees to a crystal mass; * * * As far as the difficult gasification

is concerned, I might mention that most of the modern carbureters are so constructed (even though not entirely rationally) that they can still be operated with benzol without any disturbance. Besides, in winter, when gasification is not so good, even with gasoline, as in the hot part of the year, you can help yourself by diluting the benzol with some gasoline—⅔ benzol and ⅓ gasoline—and in this way you can counteract eventful fuel solidification in the heavy winter cold. The ordinary 90% benzol which alone comes into question for automobile operation does not solidify at 0 degrees, but only at about —5 degrees. * * * The 90% commercial benzol for motor purposes, besides, is brought into trade in winter by the manufacturers mixed with a higher percentage of toluol, whereby the solidification point is changed considerably and is lowered far below 0 degrees."

Here in this publication is definitely taught a mixture of gasoline and benzol, containing toluol, which is precisely what is covered by applicant's claims. That the applicant may have discovered that the mixture is desirable in summer as well as in winter, and has other virtues perhaps not before known, does not entitle him to a patent upon it.

Applicant's counsel in his brief realizes the force of the foregoing and attempts to show that the gasoline referred to by the author was not in fact motor gasoline, but petroleum ether, and in support of the claim states: "In order to prevent the benzol from freezing in cold weather, he suggests adding one-third 'Benzin.' On the next page, he speaks of this one-third 'Benzin' as petroleum ether." But this is an error. The author clearly was speaking of two different mixtures. The context clearly shows that in the mixture covered by applicant's claims, the ingredients advised by the author were motor benzine or gasoline, and benzol containing toluol, and the purpose of this mixture was to prevent freezing and was to be used in cold weather, while on the next page the author advises an entirely different mixture, to wit, petroleum ether and benzol for the purpose of improving gasification.

In view of this article, we hold that there is no patentable novelty in the mixture involved in applicant's claims.

In view of this conclusion, it becomes unnecessary to consider the question of estoppel.

The decision of the Commissioner is affirmed.

Affirmed.